NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 31

No. 2019-101

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Grand Isle Unit, |
| | Criminal Division |
| | |
| Eric G. Nagel | October Term, 2019 |

Robert A. Mello, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, Joshua S. O'Hara, Appellate Defender, and
  Katarina Marczeski, Legal Intern, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson and Eaton, JJ., and Burgess, J. (Ret.)[1] and
         Morris, Supr. J. (Ret.), Specially Assigned

¶ 1.     **REIBER, C.J.**   Defendant Eric Nagel appeals from the trial court's denial of his motion to suppress and dismiss. He argues that police officers violated Article 11 of the Vermont Constitution by expanding the scope of a valid traffic stop into a drug investigation without reasonable suspicion of drug-related criminal activity. We agree and reverse.

## I.  Facts

¶ 2.     The following facts are undisputed. In October 2017, a deputy sheriff was driving on Route 2 and recognized the vehicle in front of him from prior law enforcement encounters. He

---

[1] Justice Burgess was present for oral argument but has since recused himself.

ran a registration check on the vehicle and learned the car was registered to Courtney Nagel. The officer knew from prior law enforcement experience that Courtney Nagel was married to defendant and that defendant's license was criminally suspended. He also was aware that defendant had been known to visit residences suspected of drug dealing. The deputy observed that the driver of the vehicle appeared to be defendant.

¶ 3. Defendant was alone in the vehicle and voluntarily pulled off the road after being followed by the deputy. The officer activated his blue lights and initiated a traffic stop. Several other officers were also present at the stop. The deputy confirmed through the Vermont Department of Motor Vehicles database that defendant's license was criminally suspended. The deputy told defendant he would issue a citation for the suspended-license offense. Defendant asked whether the officer would arrest him, and the deputy said that he could but would not. He said they would take his keys to the police office and a valid driver could pick them up and retrieve the vehicle. He informed defendant he must fill out the citation paperwork and returned to his vehicle. As the deputy returned to the police car, he told the other officers that he would "let [defendant] think that this is going to be a go and then I'm going to ask him to search his car."

¶ 4. The deputy worked on paperwork in his vehicle for several minutes. Another officer asked defendant to step outside the vehicle and patted him down. The deputy came back to defendant and asked him if he could search the vehicle for drugs. Defendant stated that there were no drugs in the car. The officer said he knew defendant was associated with people and residences suspected of drug-related crime and again asked to search his car. Defendant said the officer "had no reason to look through it." Another officer present, the sheriff, stated, "OK, then, I'm going to call a wrecker tow because I've got probable cause because somebody has smoked marijuana in the vehicle in the last thirty days." He said the "faint hint of marijuana" gave him "probable cause to seize it, impound it and do up a search warrant." The sheriff did not claim that defendant had been smoking marijuana. The deputy stated they could "call a canine out to do a

search on the car." Defendant then gave consent orally and in writing for the officers to search his vehicle. The officers found drugs and drug-related paraphernalia in the vehicle.

¶ 5. The State charged defendant with operation of a motor vehicle with a suspended license; possession of heroin; and possession of a regulated drug greater than the recommended therapeutic dosage. Defendant filed a motion to suppress the evidence and dismiss, arguing that the State had violated the Fourth Amendment to the United States Constitution and Article 11 of the Vermont Constitution. Following a hearing, the trial court denied the motion. Defendant subsequently pled guilty to driving with a suspended license and entered a conditional guilty plea to an amended charge of possessing a regulated drug in an amount greater than the recommended individual therapeutic dosage. He was sentenced to two-to-five years' imprisonment, all suspended, and released on probation.

¶ 6. Defendant timely appeals, arguing that (1) the officers violated Article 11 of the Vermont Constitution by expanding the scope of this stop into a drug investigation without reasonable suspicion and (2) defendant's unlawful detention invalidated his consent. "When reviewing the trial court's decision on a motion to suppress, we review the court's legal conclusions de novo and its factual findings for clear error." State v. Manning, 2015 VT 124, ¶ 10, 200 Vt. 423, 132 A.3d 716.

II. Unlawful Detention

¶ 7. We first address defendant's argument that the officers unlawfully detained him in violation of Article 11. Defendant does not dispute that the initial motor vehicle stop, based on the officer's reasonable suspicion that defendant was driving with a suspended license, was lawful. Rather, defendant contends that the officers' subsequent questioning of defendant about suspected drug-related activity prolonged the initial stop, and this was unlawful because the officers lacked reasonable suspicion that he was engaged in drug-related crime. The State counters that the officers' conduct did not unreasonably prolong the stop because the drug-related questioning took

3

place before the officers had completed the tasks associated with the initial stop. Alternatively, the State argues that prolonging the motor vehicle stop was justified because the officers had probable cause to arrest defendant. The State does not argue that the officers had reasonable suspicion that defendant was engaged in drug-related crime.

¶ 8. "Like the Fourth Amendment [to the United States Constitution], Article 11 protects citizens against unreasonable searches and seizures." Zullo v. State, 2019 VT 1, ¶ 58, __ Vt. __, 205 A.3d 466 (quotation and alteration omitted); see also State v. Cunningham, 2008 VT 43, ¶ 16, 183 Vt. 401, 954 A.2d 1290 ("We have consistently held that Article 11 provides greater protections than its federal analog, the Fourth Amendment . . . ."). "The temporary stop of a vehicle is a seizure subject to Article 11 protection from governmental invasions of privacy." Zullo, 2019 VT 1, ¶ 58. "Although seizures normally require that a law enforcement officer have probable cause to believe that the person being seized has engaged in criminal activity, the lesser standard of reasonable suspicion of either criminal activity or even a minor traffic violation can form the basis of a valid temporary stop." Id. ¶ 59. "[A] reasonable and articulable suspicion of illegal activity . . . means there must be more than an unparticularized suspicion or hunch of criminal activity, but considerably less than proof of wrongdoing by a preponderance of the evidence." State v. Rutter, 2011 VT 13, ¶ 8, 189 Vt. 574, 15 A.3d 132 (mem.) (quotation, alteration, and citation omitted). "In determining whether an officer had reasonable suspicion to effectuate a seizure or extend an investigative detention, we look at the totality of the circumstances." Manning, 2015 VT 124, ¶ 14.

¶ 9. An investigatory stop based on reasonable suspicion must be "sufficiently limited in scope and duration." Florida v. Royer, 460 U.S. 491, 500 (1983) (discussing whether investigatory stop violated Fourth Amendment); State v. Sprague, 2003 VT 20, ¶ 17, 175 Vt. 123, 824 A.2d 539 (holding that "[i]mplicit" in rule that officers "may stop and temporarily detain a vehicle based on little more than a reasonable and articulable suspicion of wrongdoing . . . is the

4

corollary requirement that the police intrusion proceed no further than necessary to effectuate the purpose of the stop"). Continued detention following a lawful traffic stop may be lawful if it falls within the scope and duration of the initial stop. See Rodriguez v. United States, 575 U.S. 348, 350 (2015) (holding investigatory stop may not be "prolonged beyond the time reasonably required to complete the mission" of stop (quotation and alteration omitted)); United States v. Sharpe, 470 U.S. 675, 682 (1985) (holding continued detention must be "reasonably related in scope to the circumstances which justified the interference in the first place" (quotation omitted)); see also State v. Alexander, 2016 VT 19, ¶ 16, 201 Vt. 329, 139 A.3d 574. But if continued detention exceeds the limits of the initial stop, the detention will be unlawful unless it is supported by additional reasonable suspicion. Cunningham, 2008 VT 43, ¶ 30 (holding "post-stop investigative expansion . . . is an additional seizure under Article 11, and therefore must—like an initial stop—be supported by a reasonable, articulable suspicion of wrongdoing"); see also Manning, 2015 VT 124, ¶ 12 ("If, during the course of the investigative stop, an officer gathers additional information providing reasonable suspicion that some other criminal act is occurring, the officer may extend the detention to investigate that activity . . . .").

¶ 10. The investigatory stop's purpose is central to deciding whether continued detention is justified by the reasonable suspicion supporting the initial stop or whether it is an additional seizure that requires additional reasonable suspicion. State v. Alexander, 2016 VT 19, is instructive. In Alexander, the defendant was a passenger in a taxi cab, which was detained due to a traffic violation. During the stop, the officer asked the driver to exit the vehicle and questioned the driver about defendant. Then the officer questioned defendant and asked to search defendant's bags, where the officer discovered heroin. We concluded that the officer had unlawfully prolonged the stop when he asked the driver to get out of the car. Id. ¶ 18. We explained that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission.'" Id. ¶ 16 (quotation omitted). Thus, a police officer who detains a defendant based on reasonable

5

suspicion of a traffic violation "may make ordinary inquiries incident to the traffic stop and related to ensuring roadway safety, . . . [b]ut the officer may not prolong a traffic stop to pursue an unrelated criminal investigation." Id. ¶ 17 (quotation omitted). We reasoned that at the time the officer asked the driver to exit the vehicle, the officer had "abandoned, or at least indefinitely suspended, any intention of ticketing the driver. The focus of his inquiry pivoted from the traffic infraction that supported the stop in the first place to an investigation arising from suspicion that defendant was engaged in drug-related crimes." Id. ¶ 18 (footnote omitted). As such, the officer was extending the defendant's detention to pursue a new "mission," unrelated to the initial purpose of the stop, and pursuing "[t]his new 'mission' prolonged the traffic stop beyond the time necessary to effectuate the purpose of the traffic stop." Id. Because the new mission exceeded the scope and duration of the initial stop, the reasonable suspicion that justified the initial stop could not justify the extended detention. Id. Prolonging the stop was unlawful unless there was "additional reasonable suspicion to support the extended seizure." Id.

¶ 11.   Here the officers did not have reasonable suspicion that defendant was engaged in drug-related crime, and the State does not argue otherwise. The record shows that one of the officers had recently seen defendant's car outside a house suspected of criminal activity, and another officer said he smelled marijuana that had been smoked in the vehicle by someone in the past thirty days. The "faint smell of burnt marijuana" has limited probative value and will not, by itself, support the State's seizure of a defendant's vehicle. See Zullo, 2019 VT 1, ¶¶ 81-83. Likewise, "presence in or travel to an area of known criminal activity, without accompanying suspicious conduct or other factors, does not provide reasonable suspicion of criminal wrongdoing." Alexander, 2016 VT 19, ¶ 23; see also Cunningham, 2008 VT 43, ¶¶ 20, 22 (holding that information from police dispatch system that anonymous source reported defendant "had prior involvement with drugs" was insufficient to support expansion of traffic stop for driving with suspended license into drug investigation). These facts, considered together in the totality of the

6

circumstances, do not support a reasonable, articulable suspicion that defendant was involved in a drug-related crime at the time of the investigatory stop. Compare Cunningham, 2008 VT 43, ¶ 27 (concluding that totality of circumstances, including anonymous tip, information from police dispatch that anonymous sources had said defendant was previously involved in drug-related crime, defendant's nervousness, defendant's failure to provide documents, and his unexplained presence in town, failed to provide reasonable suspicion of present drug-related crime), with Manning, 2015 VT 124, ¶ 22 (concluding that totality of circumstances, including that defendant was parked in "area known for drug activity," had large amount of cash stuffed in wallet, and appeared to hide old prescription bottle upon officer's approach, supported reasonable suspicion of drug-related crime).

¶ 12.    Because the officers lacked reasonable suspicion that defendant was engaged in drug-related crime, the drug-related investigation was unlawful unless it was within the scope and duration of the initial stop. The deputy initially detained defendant based on reasonable suspicion that defendant was driving with a suspended license. Consistent with that purpose, the deputy asked for defendant's driver's license, checked the validity of the license, learned that defendant was driving with a suspended license, talked with defendant about the offense and told him he would release him with a citation, and prepared paperwork for the citation. These activities were "reasonably related in scope" to the suspended-license offense, Sharpe, 470 U.S. at 682 (quotation omitted), and did not "prolong" the stop "beyond the time reasonably required to complete the mission" of the stop, Rodriguez, 575 U.S. at 350 (quotation and alteration omitted).

¶ 13.    Subsequently, but before issuing the suspended-license citation or returning defendant's license, defendant was asked to exit his vehicle and patted down. The deputy then repeatedly asked to search defendant's car and questioned him about his contacts with persons and places associated with drug-related crime. The sheriff told defendant, incorrectly, that the officers

had authority to seize his car,[2] and the deputy said that he would request a canine unit to search the car. This inquiry was not reasonably within the scope of the suspended-license offense. As in Alexander, "[t]he focus of [the] inquiry pivoted" from the suspended-license offense "that supported the stop in the first place" to a new investigation, "arising from suspicion that defendant was engaged in drug-related crimes." 2016 VT 19, ¶ 18. "This new 'mission' prolonged the traffic stop beyond the time necessary to effectuate the purpose of the traffic stop, and thus required additional reasonable suspicion to support the extended seizure." Id.

¶ 14. Contrary to the State's argument, the fact that the deputy had not yet completed the tasks associated with the suspended-license offense did not bring the drug investigation within the lawful limits of the initial stop. "Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Id. ¶ 16 (quotation omitted and emphasis added). Police officers are under an obligation to "diligently pursue[] a means of investigation that [is] likely to confirm or dispel their suspicions quickly." Sharpe, 470 U.S. at 686. Certainly, "[a] court . . . should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." Id. But officers cannot delay completing a motor vehicle stop in order to launch "an unrelated criminal investigation." Alexander, 2016 VT 19, ¶ 17 (quotation omitted). " 'Citizens do not expect that police officers handling a routine traffic violation will engage, in the absence of justification, in stalling tactics, obfuscation, strained conversation, or unjustified exit orders, to prolong the seizure in the hope that, sooner or later, the stop might yield up some evidence of an

_____

[2] To seize defendant's car while requesting a search warrant requires "probable cause that the car contains evidence of a crime." State v. Platt, 154 Vt. 179, 189, 574 A.2d 789, 795 (1990). As explained above, the smell of burnt marijuana did not support reasonable suspicion, much less probable cause. See Zullo, 2019 VT 1, ¶¶ 77, 81-83 (explaining that "seizure and search of plaintiff's vehicle . . . had to be supported by probable cause rather than the less-rigorous standard of reasonable suspicion" and that "faint odor of burnt marijuana . . . did not, in and of itself, create a fair probability that marijuana would be found in the vehicle").

8

arrestable crime.' " Sprague, 2003 VT 20, ¶ 17 (quoting Commonwealth v. Gonsalves, 711 N.E.2d 108, 112 (Mass. 1999)).

¶ 15. Moreover, the record shows that the officers here had failed to complete the tasks associated with defendant's offense only because they had chosen not to complete them. The footage from the deputy's body camera illustrates this. As the deputy walked to his car to fill out the paperwork for the suspended-license offense, he told the other officers, "I'm going to let him think that this is going to be a go and then I'm going to ask him to search his car." The body camera footage shows that the deputy spent several minutes filling out forms and then, when he returned to defendant, he suggested the paperwork was still incomplete, saying: "Before I do all the paperwork, just wondering if you'd let me search your car." It is clear that the officers delayed completing the traffic stop in order to pursue an unrelated criminal investigation without reasonable, articulable suspicion that defendant was engaged in the suspected crime. This was unlawful. See Alexander, 2016 VT 19, ¶ 16.

¶ 16. The State claims that Alexander compels a different conclusion. In that case, we relied on the fact that the officer had "abandoned, or at least indefinitely suspended," the tasks associated with the initial stop to conclude that the officer's subsequent drug-related investigation prolonged the traffic stop. Id. ¶ 18. But Alexander did not create a bright-line rule centered on the completion of a traffic stop. See id. Rather, Alexander held that an officer may not launch a new inquiry, unrelated to the initial stop, without reasonable suspicion to do so. Id. Whether the officer has completed the initial investigation is relevant, but not dispositive, in deciding whether the officer's inquiry is within the permissible duration of the initial stop.

¶ 17. Alternatively, the State claims that the extended stop was justified because the officer had probable cause to arrest defendant for driving with a criminally suspended license, citing Vermont Rule of Criminal Procedure 3(b), which authorizes warrantless arrest if an officer has witnessed the defendant committing a misdemeanor. Defendant counters that according to

9

Vermont Rule of Criminal Procedure 3(f), the officer would have had to release defendant with a citation, so prolonging the detention was not justified. The State is correct that the deputy could have arrested defendant for the suspended-license offense, which was committed in the officer's presence. V.R.Cr.P. 3(b) (providing that "law enforcement officer may arrest without a warrant a person whom the officer has probable cause to believe has committed or is committing a misdemeanor in the presence of the officer"). Defendant is correct that after being arrested, the deputy would have had to release defendant with a citation. V.R.Cr.P. 3(f) ("A person who has been arrested without a warrant for a misdemeanor offense shall be released on citation if . . . none of the exceptions in subsection (c) of this rule apply . . . .").

¶ 18. The parties' disagreement about Rule 3 is immaterial. Essentially, the State's argument suggests that if officers have the right to detain a defendant further in order to arrest him, but choose not to do so, whatever time they would have used to arrest the defendant they can now spend on an unrelated purpose. This is incorrect. Probable cause to arrest a defendant for one offense does not justify detention to investigate a different offense. Detention for arrest based on probable cause, like detention for an investigatory stop based on reasonable suspicion, is limited to its purpose. Cf. State v. Bauder; 2007 VT 16, ¶ 25, 181 Vt. 392, 924 A.2d 38 ("The finding of probable cause is a decidedly fact-specific determination, turning on whether the particular circumstances establish a nexus between the crime, the suspect, and the place to be searched." (quotation omitted)); Royer, 460 U.S. at 499-500 (explaining traffic stop based on reasonable suspicion must be limited in scope and duration because "Fourth Amendment's prohibition against unreasonable searches and seizures has always been interpreted to prevent a search that is not limited to the particularly described 'place to be searched, and the persons or things to be seized,' even if the search is made pursuant to a warrant and based upon probable cause," and this protection is not "diluted" in context of investigatory stop (citation omitted)).

¶ 19.     United States v. Bain, on which the State relies, does not disturb our analysis. 135 F. App'x 695 (5th Cir. 2005) (per curiam). In Bain, the Fifth Circuit stated that the officer had probable cause to arrest the defendant for driving with a suspended license, and therefore prolonging the defendant's detention was constitutional. Id. at 696-97. Because the reported facts are sparse, it is unclear whether defendant's detention was prolonged in order to arrest defendant for driving with a suspended license or for some other purpose. If Bain holds that an officer may prolong a traffic stop to arrest a defendant for a particular offense based on probable cause that the defendant committed that offense, then we agree with Bain. See Manning, 2015 VT 124, ¶ 12 (holding officer may prolong traffic stop after gathering additional information that justifies prolonging stop). If, however, Bain holds that probable cause to arrest a defendant for one offense justifies detention for a different offense, then we disagree with Bain. The other cases cited by the State are inapposite and also do not disturb our analysis. See United States v. Johns, No. 13-cr-00071, 2013 WL 4587744, at *4 (W.D. La. Aug. 27, 2013) (holding prolonged detention justified when officers had probable cause to arrest defendant and "a litany of suspicious factors" that arose during investigation "justified Defendant's continued detention and eventual arrest"); United States v. Forney, No. 3:12-cr-00381-FDW-DCK, 2013 WL 2317700, at *8-10 (W.D.N.C. May 28, 2013) (holding continued detention lawful because search-incident-to-arrest exception applied, based on probable cause to arrest defendant, defendant's admission that unregistered firearm was in car, and passenger showed suspicious behavior, indicating "legitimate safety concerns to support a search of the vehicle").

¶ 20.     Additionally, the State claims that the deputy was continuing to detain defendant because he was waiting for information about whether defendant was in violation of conditions of probation related to the suspended-license offense. The record does not support this view. The body camera video shows the deputy telling another officer, "Last weekend, last week ago Sunday, he was outside—we have two drug houses where people are buying—he was inside one of them."

11

The other officer asked what kinds of drugs were involved, and the deputy said heroin and cocaine. The other officer then asked whether the deputy was going to give defendant a citation. The deputy responded, "Yeah. I'm waiting for conditions, though, because if he's got conditions, then . . . ." The deputy subsequently told defendant he would not arrest him for the suspended-license offense and would complete the citation paperwork, suggesting he would then release defendant; but he told the other officers he was going to "let [defendant] think that this is going to be a go" and then ask to search the car. No one mentioned conditions again for the rest of the stop. This record does not support the State's view that defendant was being detained pending a report on whether he was in violation of conditions of release. Defendant's continued detention was clearly due to the drug investigation, not the suspended-license offense.

¶ 21. We conclude the officers unlawfully expanded the valid traffic stop into a drug investigation without reasonable, articulable suspicion of criminal drug-related activity in violation of Article 11.

### III. Consent

¶ 22. We next address defendant's argument that his unlawful detention invalidated his consent. "In general, consent obtained during an illegal detention is invalid." Alexander, 2016 VT 19, ¶ 31 (quotation omitted); see also State v. Winters, 2015 VT 116, ¶ 27, 200 Vt. 296, 131 A.3d 186 (holding that "[b]ecause defendant was illegally seized, his subsequent 'consents' to the search of his person and car, which occurred very shortly thereafter, were tainted and ineffective" (quotation omitted)). However, "evidence obtained by means of a valid consent following an illegal detention may in some circumstances be admissible where the causal nexus with the original illegality is sufficiently attenuated." Sprague, 2003 VT 20, ¶ 31. "Voluntariness is to be determined from the totality of the circumstances, with the State carrying the burden of demonstrating that the consent was freely given and not coerced by threats or force, or granted only in submission to a claim of lawful authority." State v. Pitts, 2009 VT 51, ¶ 24, 186 Vt. 71,

12

978 A.2d 14 (quotation omitted). "Among the factors to consider are the temporal proximity of the illegal detention to the consent, and the presence of any intervening circumstances between the two events." Sprague, 2003 VT 20, ¶ 31 (quotation omitted). The State must prove consent was voluntary "with clear and positive evidence." Id.

¶ 23.     Defendant here gave verbal and written consent. Because defendant was illegally detained, unless the State shows by "clear and positive evidence" that the consent was voluntary, we must conclude that defendant's consent was invalid. Id. The State fails to do so here. Defendant's consent arose directly from his illegal detention. There was no intervening time, and there were no intervening events. See Sprague, 2003 VT 20, ¶ 32 (holding there was "no evidence that defendant's compliance was anything other than a submission to the officer's authority" and "there were no intervening events to attenuate the taint of the initial illegality"). On the contrary, defendant acceded to the search of his car in response to the sheriff's erroneous claim that he had probable cause to seize the car and "do up" a search warrant based on the thirty-day-old smell of burnt marijuana. Defendant's consent was "granted only in submission to a claim of lawful authority," and as such, it was invalid. Pitts, 2009 VT 51, ¶ 24.

¶ 24.     In conclusion, we hold the officers unlawfully prolonged defendant's traffic stop without a reasonable, articulable suspicion that defendant was involved in drug-related crime, and defendant's subsequent consent to search his vehicle was invalid. Therefore, the warrantless search was unconstitutional, and the trial court erred in denying defendant's motion to suppress the evidence and dismiss.

Reversed.

FOR THE COURT:

_____
Chief Justice

13