NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 39

Nos. 2018-061/2019-190 & 2018-067/2019-196

| State of Vermont | Supreme Court |
|---|---|
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Criminal Division |
| | |
| Thomas Ferguson & Katherine A. Ferguson | February Term, 2020 |

Helen M. Toor, J. (motion for animal forfeiture)
Alison S. Arms, J. (motion to suppress evidence and dismiss, and final judgment)

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for
  T. Ferguson, and Allison N. Fulcher of Martin & Delaney Law Group, Barre, for K. Ferguson,
  Defendants-Appellants.

PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.    **ROBINSON, J.**  Defendants appeal their respective convictions for animal cruelty and a judgment for animal forfeiture, both arising from the conditions in which they kept over twenty animals in their care. They challenge their convictions on the basis that the affidavit prepared by a police officer in support of the search warrant that led to the charges relied on information obtained from a prior illegal search, and therefore the court should have excluded all evidence obtained as a result of the warrant. They challenge the forfeiture order on the ground that the court improperly admitted hearsay statements in the forfeiture hearing. We affirm as to the criminal convictions because even if the information from the challenged prior search is stricken, the remaining portions of the affidavit are sufficient to support the search warrant that led

to the charges. We agree that the court improperly allowed hearsay evidence in the forfeiture proceeding, and remand for the court to reconsider its ruling without the objectionable evidence.

¶ 2. Except where otherwise noted, the court found the following facts by a preponderance of the evidence in its order denying defendant's motion to suppress evidence and dismiss. In September 2017, defendants' landlord entered their trailer to check the smoke detectors. He found the interior of the residence smelled strongly of urine and ammonia, and he observed more than two dozen animals in "questionable living conditions." Numerous dogs were crowded into small crates and lacked access to food and water, including a nursing mother and her puppies. Birds were kept in dirty cages and their water was viscous and filled with feces, food, and feathers. Landlord took photographs and a video of some of the animals, including three dogs sharing one travel crate. Landlord, his family, and other contractors continued to do maintenance work on the property for the next month, during which time the animals remained in similar conditions.

¶ 3. One of landlord's contractors eventually contacted the police on September 27, 2017 regarding the animals' conditions. Trooper Jacqueline June met with landlord outside the residence on or about September 29. Landlord told her about the conditions in the home and that the dogs had gone without water for a minimum of nine hours at a time on at least three to four occasions. He showed her the video he took. She testified that based on landlord's descriptions and the video, she was concerned that the puppies may not survive one day to the next. Trooper June did not enter the residence at that time; landlord told Trooper June that he would contact her when he had permission to enter the home.

¶ 4. At some point between September 30 and October 4, 2017, Trooper June entered the residence with landlord and without the knowledge or permission of defendants. She photographed the animals and confirmed what contractor and landlord had told her regarding the smell of urine, the cramped crates, and the birds' water. She subsequently requested a warrant to search the property and seize the animals and other related evidence.

2

¶ 5. Trooper June got the warrant and executed it in early October. Police seized a total of twenty-eight animals, including twelve dogs, nine birds, one cat, two ferrets, two guinea pigs, one hamster, and one bearded dragon. The State charged each defendant with twelve counts of animal cruelty for depriving the animals of food, water, shelter, rest, sanitation, or necessary medical attention in violation of 13 V.S.A. § 352(4). It also moved for forfeiture of the animals under 13 V.S.A. § 354(d).

¶ 6. Defendants moved to suppress evidence and dismiss the criminal charges, arguing that the search warrant was based on Trooper June's initial search of their home and that the search had been illegal. The trial court denied the motions, concluding that landlord could not consent to the search on defendants' behalf, but that exigent circumstances permitted Trooper June's initial entry. Defendants each entered conditional pleas of no contest to four counts of cruelty to animals, reserving the right to appeal the court's denial of their motions. The court deferred sentencing Katherine Ferguson for a period of three years and sentenced Thomas Ferguson to six to twelve months, suspended with a two-year period of probation.

¶ 7. In separate dockets, the trial court granted the State's forfeiture motions. The State presented, among other evidence, the affidavit Trooper June wrote in support of the warrant. Defendants objected to the admission of hearsay statements from landlord and contractor contained in the affidavit. The court ultimately admitted the hearsay statements and granted the State's forfeiture motions.

¶ 8. Defendants' appeals of their convictions have been consolidated with their appeals of the forfeiture order. We consider each in turn.

## I. Suppression of Evidence

¶ 9. Defendants argue that Trooper June's warrantless search of their home while accompanying the landlord was unconstitutional, and that all evidence obtained as a result of that search—including evidence she relied on in her subsequent application for a search warrant—must be suppressed. Accordingly, they argue that the evidence Trooper June subsequently gathered

3

pursuant to the warrant should be suppressed, and the charges should be dismissed. The State does not argue that Trooper June's initial entry into defendants' home was lawful. It contends that even assuming that initial warrantless search was unconstitutional, Trooper June's affidavit in support of the search warrant included sufficient other evidence to establish probable cause, even without her personal observations from her initial entry into the home. Therefore, the State argues, there is no reason to suppress the results of the search warrant or dismiss the charges.

¶ 10. When reviewing a trial court's decision on a motion to suppress, we review the court's legal conclusions without deference and its factual findings for clear error. State v. Nagel, 2020 VT 31, ¶ 6, __ Vt. __, __ A.3d __. For purposes of our analysis, we assume without deciding that Trooper June's initial warrantless search of the home was unconstitutional.[1] We conclude that, even excluding the observations Trooper June made during that search, the other evidence presented in Trooper June's application for a warrant—in particular, the reports from landlord and the contractor—was sufficient to support a finding of probable cause.[2]

¶ 11. "A search warrant is not invalid merely because it is supported in part by an affidavit containing unlawfully obtained information." State v. Lizotte, 2018 VT 92, ¶ 37, 208 Vt.

---

[1] The trial court was correct that landlord could not give valid consent to a search of defendants' home. See State v. Roberts, 160 Vt. 385, 391, 393, 631 A.2d 835, 839-40 (1993) (citing Chapman v. United States, 365 U.S. 610, 616-17 (1961)) (noting that landlord lacks authority to consent to search under Fourth Amendment, but can do so if premises have been abandoned, and that "the result is the same whether analyzed under the Fourth Amendment or Article 11"); State v. Morris, 165 Vt. 111, 124, 680 A.2d 90, 99 (1996) ("[A] landlord who has the right to enter a tenant's house to view waste does not have the authority to consent to a police search of the premises."). For purposes of our analysis, we assume without deciding that Officer June's warrantless entry was not permitted pursuant to the emergency-assistance exception to the warrant requirement. See State v. Mountford, 171 Vt. 487, 490-91, 769 A.2d 639, 644 (2000) (adopting three-part test for assessing whether emergency-aid exception applies); see also State v. Ford, 2010 VT 39, ¶¶ 13-15, 188 Vt. 17, 998 A.2d 684 (describing Mountford test and noting that United States Supreme Court has rejected second factor for purposes of United States Constitution).

[2] A finding of probable cause to issue a warrant must be made "based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." V.R.Cr.P. 41(d)(1). Defendants have not challenged the court's reliance on the affidavit's recitation of landlord's and contractor's statements.

240, 197 A.3d 362 (quoting State v. Moran, 141 Vt. 10, 16, 444 A.2d 879, 882 (1982)). "Where the affidavit includes allegations based on illegally obtained evidence as well as independent and lawfully obtained information, a valid search may issue if the lawfully obtained information, considered by itself, is sufficient to establish probable cause." Id. ¶ 37 (quoting Moran, 141 Vt. at 16, 444 A.2d at 882). "Probable cause to search exists when the facts and circumstances set forth in the affidavit are such that a judicial officer may reasonably conclude that the evidence sought is connected to the crime and located at the place indicated." Moran, 141 Vt. at 16, 444 A.2d at 882.

¶ 12. In considering whether probable cause existed, "we must take the animals' welfare into consideration." State v. Sheperd, 2017 VT 39, ¶¶ 19-20, 204 Vt. 592, 170 A.3d 616 (stating that "exceptionally neglected condition of the dog on the porch reasonably supported a probable cause finding to support a search for and seizure of not only that dog, but also the others reasonably believed to be at the home"). In the context of searches and seizures, "the treatment of animals is different from that of other types of property," because "animals are living, sentient beings to which the law may provide protections in their own right." Id. ¶¶ 17-18.

¶ 13. After excluding the results of her initial search, Trooper June's affidavit contains the following paragraphs regarding the animals:

> 4) On September 29, 2017 at approximately 0913 hours, I was dispatched to [defendants' residence] for a reported concern for animal welfare.
>
> 5) Prior to my arrival at the residence I . . . contacted [contractor] via telephone. [Contractor] advised that while doing construction work at the aforementioned residence, he observed multiple dogs together in small crates that were in their own feces and urine. [Contractor] advised that one of the dogs was missing a lot of fur on its backside. [Contractor] advised that he observed multiple birds and other small animals in stacked crates. [Contractor] advised that the animals were kept in these conditions for over nine hours at a time. [Contractor] advised that he had seen Katherine Ferguson . . . pick up one of the dogs by the nap[e] of the neck to put it back in the house. Ferguson is renting the residence . . . .
>
> 6) Upon arrival at the residence I made contact with the owner of the residence who is also the person in charge of the construction work [landlord]. [Landlord] advised that he owned the residence

5

that he was renting to [defendants]. [Landlord] said [defendants] had moved in approximately a month ago. [Landlord] advised that at the time they were to move in [defendants] said they had only one dog. [Landlord] advised that he has been to the residence on multiple occasions since [defendants] have moved in and they have multiple animals to include cats, dogs, guinea pigs, birds, and a reptile. [Landlord] advised that [defendants] are rarely home and the animals spend most of their time in crates. [Landlord] further advised that the residence is on 117.2 acres of land which the animals should have access to. [Landlord] provided a video that he had taken on September 4, 2017 of the residence. In the video recording [landlord] is commenting on the smell of ammonia from the animal urine. As [landlord] is walking through the residence multiple animals in shared cages can be viewed.

¶ 14. This information is sufficient to establish probable cause to support a search warrant. Trooper June spoke to both contractor and landlord, who provided consistent information regarding the condition of the animals. Landlord's account was further corroborated by the video. The evidence as recounted in the affidavit tends to show that the animals were kept in extremely cramped conditions and in their own feces and urine, and that they were kept in those conditions for long periods of time. There was also evidence that at least one dog had a medical problem related to loss of fur. While the evidence was somewhat stale, particularly the video, the conditions described are related to long-term neglect, which is more likely to remain static over time compared to acute abuse. See State v. Demers, 167 Vt. 349, 355, 707 A.2d 276, 279 (1997) ("Whether information is too stale to establish probable cause depends on an assessment of the totality of the circumstances, with consideration given to the nature of the criminal activity, the duration of that activity, the nature of the property to be seized, and the nature of the location to be searched."). Considering the totality of the circumstances, including the animals' welfare, the information in Trooper June's affidavit other than her observations during her initial warrantless entry was sufficient to support a finding of probable cause. Accordingly, the fruits of the search pursuant to the warrant need not be suppressed, and we affirm the criminal convictions.

¶ 15. The trial court held a forfeiture hearing pursuant to 13 V.S.A. § 354. In the forfeiture hearing, the State presented testimony from an employee at the Humane Society, various photographs of defendants' home and the animals, the testimony of Trooper June, and the affidavit of probable cause she wrote in support of the warrant. Defendants did not object to admission of the affidavit, but objected to admission of the hearsay statements from landlord and contractor that were included in the affidavit. The State argued that because affidavits of police officers are admissible in forfeiture proceedings under 13 V.S.A. § 354(f)(2), hearsay within the affidavits is likewise admissible. The court stated that "your hearsay objection would normally apply, and those portions would not be admitted," but that "I'm not clear whether the intent of the statute is to get rid of that." The court reserved ruling at the time.

¶ 16. In its subsequent written ruling, the court concluded that under § 354(f)(2) the hearsay statements within the affidavit were admissible. It noted:

> While it is true that normally one exception to the hearsay rule, such as the business records exception, does not mean that hearsay of other types within the document is admissible, this statute is not phrased in terms of a narrow exception to the hearsay rule. Instead, it broadly states that affidavits "shall be admissible."

The court understood the statute to mean "that everything in the affidavit is admissible, including the hearsay report that animals were caged for up to nine hours."

¶ 17. Based on the affidavit and other evidence, the court found by clear and convincing evidence that "the dogs were restrained for many hours at a time in cages that were too small for the number of dogs," that they were "denied drinking water for long periods of time," and that they were denied adequate medical attention. It found that "the birds were denied adequate water and sanitation," and "the ferrets and the bearded dragon were denied clean drinking water." It therefore granted the motion for forfeiture as to these animals.[3]

---

[3] Before the hearing, the State dropped its forfeiture claim as to one dog who belonged to the defendants' daughter, and defendants stipulated to the forfeiture of seven animals, including

¶ 18.    On appeal, defendants argue that the trial court erred in admitting the hearsay statements contained in Trooper June's affidavit.  The State does not defend the trial court's legal interpretation of § 354(f)(2), but argues that even if the hearsay was improperly admitted, the error was harmless.  We conclude that the hearsay was improperly admitted and cannot conclude that the error was harmless.  We therefore reverse and remand for the trial court to make further findings.

## A.  Admission of Hearsay

¶ 19.    We review the trial court's interpretation of 13 V.S.A. § 354(f)(2) without deference.  See Lambert ex rel. Estate of Lambert v. Beede, 2003 VT 75, ¶ 9, 175 Vt. 610, 830 A.2d 133 (mem.) ("The issue on appeal here—the interpretation of [a statute]—is not subject to a deferential standard of review because it is a question of law.").  Applying this standard, we conclude that the trial court erred as a matter of law in admitting the hearsay evidence.  Hearsay is generally not admissible except as provided by law.  Section 354 creates an exception to the hearsay requirement for the affidavit itself, but it does not by its plain language create an exception for otherwise-inadmissible statements contained within the affidavit.  The broader structure of the statute reinforces that it only exempts the affidavits themselves from the requirements of the hearsay rule.  The statute provides a relaxation as to the form in which the testimony is received, not its content.  The hearsay statements by landlord and contractor should have been excluded.

¶ 20.    Hearsay is not admissible except as provided by the Vermont Rules of Evidence, by other rules prescribed by this Court, or by statute.  V.R.E. 802.  Hearsay within hearsay is permitted "if each part of the combined statements conforms with an exception to the hearsay rule."  V.R.E. 805; see also State v. Godfrey, 2010 VT 29, ¶ 38, 187 Vt. 495, 996 A.2d 237 (noting "evidentiary problems" with string of hearsay statements where "defendant does not argue that each level of hearsay falls under an exception").

the four puppies, two guinea pigs, and a hamster.  After the hearing, the court found that the State had not met its burden with regard to the cat and denied forfeiture of the cat.

8

¶ 21. Nothing in § 354 creates an exception to the hearsay rule for all layers of hearsay within an affidavit. Section 354 provides that in the context of animal forfeiture proceedings, affidavits of law enforcement officers are admissible evidence. In relevant part, the statute states that "[a]ffidavits of law enforcement officers, humane officers, animal control officers, veterinarians, or expert witnesses of either party shall be admissible evidence that may be rebutted by witnesses called by either party." 13 V.S.A. § 354(f)(2). Under § 354(f)(2), the affidavit of a police officer may be admitted to prove the truth of the matter asserted, even though it is an out-of-court statement by the police officer. Section 354(f)(2) creates a limited exception to the hearsay rule for affidavits of law enforcement officers, but there is no indication in the statute that the Legislature intended to create a blanket exception for not just the affidavit itself but also any hearsay statements contained within it.

¶ 22. The structure of the statute further reinforces this conclusion. The statute requires the party offering an affidavit pursuant to the statute to provide at least five days' notice and make the affiant available at the hearing by telephone if requested. 13 V.S.A. § 354(f)(2). These safeguards—advance notice and making the affiant available—do not apply to hearsay statements within the affidavit. Under the State's reading, the State would be required to make the officer who authored an affidavit available for cross-examination, but would not be required to take any steps to make available the declarant of incriminating statements contained in the affidavit. Given the absence of any safeguards relating to the hearsay statements within an affidavit admissible under the statute, we are especially reluctant to infer, in the absence of any language supporting this inference, that the Legislature intended for 13 V.S.A. § 354(f)(2) to create a blanket exception to the hearsay rule for all statements contained in the affidavit. For these reasons, the hearsay statements in the affidavit were improperly admitted.

B. Harmless Error

¶ 23. We conclude that on this record, the error was not harmless. We determine that the standard for harmless-error review in this context is a clear-and-convincing standard. Under that

9

standard, we conclude that this error was not harmless because the trial court assigned significance to the duration of the animals' conditions in concluding that forfeiture was warranted, and apparently relied on the hearsay reports in the affidavit in assessing the duration of their conditions. However, we conclude that the evidence, excluding the hearsay statements, would be legally sufficient to support an order of forfeiture if the trial court so finds. We therefore remand to the superior court for further findings or reversal.

¶ 24. Because the standard of proof in a forfeiture proceeding is clear and convincing evidence, 13 V.S.A. § 354(f)(1), we will apply the same standard in our harmless-error analysis. We have not previously determined what standard applies to clams of harmless error in forfeiture proceedings. In general, we have applied a harmless-error standard consistent with the standard of review in the underlying proceeding. For instance, in criminal proceedings, the harmless-error standard is "harmless beyond a reasonable doubt." State v. Haskins, 2016 VT 79, ¶ 17, 202 Vt. 461, 150 A.3d 202. The same harmless-error standard applies under the Indian Child Welfare Act, which employs a beyond-a-reasonable-doubt standard in proceedings to terminate an Indian parent's rights. In re G.F., 2007 VT 11, ¶ 16, 181 Vt. 593, 923 A.2d 578 (mem.). But see In re R.W., 2011 VT 124, ¶ 17, 191 Vt. 108, 39 A.3d 682 (holding that in termination-of-parental-rights proceeding "an error warrants reversal only if a substantial right of the party is affected" (quotation omitted)). Thus, in order to uphold the trial court's decision, we must be satisfied to a clear and convincing standard that the court would have reached the same conclusion had it properly refused to admit the hearsay.

¶ 25. The trial court relied on the duration of the dogs' conditions in ordering forfeiture. In a forfeiture proceeding, the State has the burden of "establishing by clear and convincing evidence that the animal was subjected to cruelty, neglect, or abandonment in violation of section 352 or 352a of this title." 13 V.S.A. § 354(f)(1). In this case, the trial court concluded that the State had met its burden under subsections (3) and (4) of § 352, which are as follows:

A person commits the crime of cruelty to animals if the person:

. . . .

    (3) Ties, tethers, or restrains an animal, either a pet or livestock, in a manner that is inhumane or is detrimental to its welfare. . . .

    (4) Deprives an animal that a person owns, possesses, or acts as an agent for of adequate food, water, shelter, rest, sanitation, or necessary medical attention or transports an animal in overcrowded vehicles.

In its conclusions of law, the trial court emphasized the length of time the animals were kept in the conditions Trooper June observed. It found that "the dogs were restrained <u>for many hours at a time</u> in cages that were too small for the number of dogs," and that those conditions were inhumane and detrimental to the dogs' welfare. (Emphasis added.) It also found that "the dogs (including a nursing mother) were denied drinking water <u>for long periods of time</u>." (Emphasis added.)

¶ 26.    In supporting these conclusions, the trial court relied on the hearsay statements at issue. In admitting all of the hearsay statements, the court specifically noted that this was "including the hearsay report that the animals were caged for up to nine hours." The State admits that the length of time the animals were crated was not supported by Trooper June's eyewitness testimony. Although Thomas Ferguson also testified that the dogs were "in the crate a little more than usual" during construction, including several hours on the day the animals were seized, the trial court did not cite or credit this testimony in its decision. The court cited only the hearsay statements to support its findings regarding the length of time the animals were crated. Given the court's repeated references to the length of time the dogs were restrained and denied drinking water, we cannot conclude to a clear and convincing standard that the court would have reached the same conclusion without reliance on the hearsay testimony.[4]

---

    [4] The State seems to minimize the significance of this testimony by arguing that "[t]he statute contains no minimum period of time during which an animal must be restrained in a manner that is inhumane or detrimental to its welfare, nor a minimum period of time during which it may be deprived of adequate food, water, sanitation, or necessary medical attention." However, as a matter of common sense, the length of time an animal is restrained may be relevant to whether the restraint is "inhumane," and the length of time an animal goes without food, water, or sanitation is relevant to whether the animal's needs are "adequate[ly]" met. 13 V.S.A. § 352(3)-(4). Based on

11

¶ 27. However, we do not reverse outright because the admissible evidence presented could support a forfeiture order if the trial court so found. The hearsay evidence was not the only evidence available to the court. We therefore remand to the trial court to weigh the evidence without the hearsay statements and decide whether the State proved by clear and convincing evidence that the animals were subject to abuse, neglect, or abandonment.[5] See In re R.W., 2011 VT 124, ¶ 18, 191 Vt. 108, 39 A.3d 682 (remanding where we could not conclude trial court would have reached same conclusion under correct standard and declining to weigh evidence in first instance).

Affirmed as to the criminal proceedings; remanded as to the forfeiture proceedings.

FOR THE COURT:

_____
Associate Justice

---

its findings, the trial court apparently assigned some weight to the duration of the various conditions.

[5] The trial court's references to the hearsay statements focus on the dogs rather than the other animals. However, we cannot tell whether, if at all, the trial court relied on statements concerning the duration of the condition of the dogs to draw inferences concerning the other animals. We accordingly reverse and remand the forfeiture order as it relates to all the animals so that the trial court can make new findings, without considering the inadmissible evidence, and can set forth its conclusions as to all of the animals.