**ENTRY ORDER**

2022 VT 15

SUPREME COURT DOCKET NO. 22-AP-076

MARCH TERM, 2022

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| v. | } | Superior Court, Rutland Unit, |
| | } | Criminal Division |
| | } | |
| Raymond Regimbald | } | Case No. 22-CR-01936 |

Trial Judge: David R. Fenster

In the above-entitled cause, the Clerk will enter:

¶ 1.     Defendant appeals the trial court's order holding him without bail pending trial under 13 V.S.A. § 7553.  We affirm.

¶ 2.     Defendant was charged with two felonies, obstruction of justice and unlawful trespass into an occupied residence, as well as two misdemeanors, stalking and aggravated disorderly conduct.  Because of his previous felony convictions, defendant faces life imprisonment under the habitual-offender enhancement in 13 V.S.A. § 11 if convicted of another felony.  At arraignment, defendant was ordered held without bail pending a weight-of-the-evidence hearing.

¶ 3.     The following evidence was presented at the weight-of-the-evidence hearing. Complainant and defendant were acquainted before March 2, 2022.  On that evening, complainant was staying in a hotel room and had left her door ajar.  Defendant approached her room, stating that he wanted to talk to her.  Complainant neither invited him to enter nor told him not to enter. She later explained that she did not want him to come in but chose to avoid confrontation out of concern that defendant might become volatile.  Defendant entered her room and complainant engaged in conversation with him.  Defendant asked complainant several questions about a mutual acquaintance and eventually left.

¶ 4.     The next morning, on March 3, complainant had been away from her room.  She returned to her room around 11:00 a.m. and found defendant inside.  Complainant noted that defendant's presence caught her off guard and caused her to jump.  She said that defendant told her that he had entered her room by climbing on top of his mother's car and climbing through the hotel room window.  She questioned how he might have been able to do so without being seen but nonetheless maintained that he had told her he came in through the window.  Complainant said that she had neither given him a key nor permission to be there.  However, she did not explicitly tell defendant to leave.  Complainant explained that, as with their previous interaction, she sought to avoid confrontation.  Complainant said that defendant continually asked her to leave with him. She initially refused but eventually acquiesced once defendant began yelling.  When she left the

room, complainant tried to walk quickly to stay away from defendant. She crossed the street multiple times and entered a couple of gas stations. Defendant followed complainant. After further altercation, unrelated to this appeal, complainant called the police.

¶ 5. Defendant was arrested on March 6 and arraigned on March 7.[1] He was ordered preliminarily held without bail pending a hearing. On March 15, the court held a weight-of-the-evidence hearing. The State submitted the following evidence: the affidavit of Rutland City Police Detective Tyler Billings; defendant's criminal-history record; a supplemental affidavit from Detective Billings explaining that he received defendant's criminal-history record from the Vermont Crime Information Center (VCIC); and a portion of a video recording of complainant's sworn statement. Defendant objected to the admission of the criminal-history record, arguing that the State needed to produce a certified copy of the record to prove that the habitual-offender enhancement applied. The court admitted the evidence over defendant's objection.

¶ 6. The court concluded on the record that the State met its burden to show that the weight of the evidence is great with regard to the unlawful-trespass charge, determining that the evidence demonstrated that defendant knew he lacked license or privilege to enter complainant's hotel room.[2] The court also concluded that the offense qualified for pretrial detention under 13 V.S.A. § 7553 because defendant's prior felony convictions supported application of the habitual-offender enhancement, meaning that defendant would face a maximum sentence of life imprisonment upon conviction.

¶ 7. Defendant maintained that the court should nonetheless exercise its discretion and release him pending trial. Defendant's mother testified that if defendant were released, he could live with her under 24/7 supervision, and she would report any violations of conditions of release to the police. The court declined to do so. It first acknowledged that defendant has ties to Vermont and limited means, and credited defendant's mother's testimony. On the other hand, it noted that defendant has a lengthy criminal history, including assault and felony convictions, violation of an abuse-prevention order, violation of conditions of release, and escape convictions. It further explained that the allegations in the present case involved a course of conduct where defendant followed and threatened complainant. Accordingly, the court ordered defendant held without bail under 13 V.S.A. § 7553.

¶ 8. Defendant appeals, arguing that the court erred by concluding that the weight of the evidence was great. He maintains that the State failed to show that defendant knew he lacked

---

[1] The State initially charged defendant by information filed on March 7, 2022. Two other felony charges, burglary into an occupied dwelling and aggravated assault, were dismissed for lack of probable cause at defendant's arraignment that same day. On March 15, the State amended the information to include the felony unlawful-trespass charge and coordinate habitual-offender enhancement. Defendant was arraigned on the amended information and stipulated to holding the weight-of-the-evidence hearing on both felony counts eligible for life sentences on that day.

[2] The court concluded that State failed to meet its burden to show that the weight of the evidence was great as to the obstruction of justice charge.

license or privilege to enter complainant's room. He also argues that the court erred by admitting defendant's criminal history record without certification.

¶ 9. Under Vermont law, a person may be held without bail if the person is charged with an offense punishable by life imprisonment and the evidence of guilt is great. Vt. Const. ch. II, § 40; 13 V.S.A. § 7553. To determine whether the evidence of guilt is great, the trial court applies the standard articulated in Vermont Rule of Criminal Procedure 12(d) and "consider[s] whether substantial, admissible evidence of guilt, taken in the light most favorable to the State, can fairly and reasonably convince a fact-finder beyond a reasonable doubt that defendant is guilty." State v. Hardy, 2008 VT 119, ¶ 10, 184 Vt. 618, 965 A.2d 478 (mem.). When the State shows that the evidence of guilt is great, a presumption against release arises. State v. Auclair, 2020 VT 26, ¶ 3, 211 Vt. 651, 229 A.3d 1019 (mem.). "In reviewing the court's ruling on this point, we consider the record below, but independently determine whether the standard has been met." State v. Blodgett, 2021 VT 47, ¶ 18, __ Vt. __, 257 A.3d 232 (mem.) (quotation omitted).

¶ 10. The felony unlawful-trespass statute provides: "A person who enters a dwelling house, whether or not a person is actually present, knowing that he or she is not licensed or privileged to do so shall be imprisoned for not more than three years or fined not more than $2,000.00, or both." 13 V.S.A. § 3705(d). The knowledge requirement under § 3705(d) "establishes a subjective standard," meaning that it does not suffice "for the State to show that defendant should have known he was not licensed or privileged to enter the dwelling." State v. Fanger, 164 Vt. 48, 52, 665 A.2d 36, 38 (1995).

¶ 11. Here, the State submitted evidence that defendant told complainant that he entered her room through the window, and that complainant said that she had not given him a key to her room or permission to be there. Taken in the light most favorable to the State, this evidence sufficiently demonstrates that defendant knew he was not licensed or privileged to enter. See State v. Cole, 150 Vt. 453, 456, 554 A.2d 253, 255 (1988) ("Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence.").

¶ 12. Defendant argues that this evidence is insufficient to demonstrate that he knew he lacked license or privilege to enter complainant's room. Defendant likens this case to State v. Kuhlmann, in which we concluded that the State failed to prove that the defendant subjectively knew he lacked permission to enter the house. 2021 VT 52, ¶ 20, __ Vt. __, 260 A.3d 1115. However, in that case, the "defendant generally had permission to be in the complainant's house when she was not there," and at the time of the incident, the defendant "had been staying with [the complainant] for about a week, using her key to enter and exit the house when she was away at work." Id. ¶ 14. No similar facts exist here.

¶ 13. Defendant maintains, however, that because he entered complainant's room without her protest on the prior evening, he reasonably could have believed he had permission to enter the next day, particularly given the lack of evidence regarding the amount of time that passed between the two visits. We disagree. The State presented complainant's statement that defendant left after his nighttime visit and returned in the late morning the following day. Viewed in the light most favorable to the State, this evidence is sufficient to establish that the two visits were separate. There is no evidence that complainant gave defendant permission to enter her room on the latter occasion. Contrary to defendant's argument, the State did not need to present evidence

3

that complainant "conditioned or restricted" defendant's entry during either visit to demonstrate that defendant subjectively knew he lacked permission to enter when her door was closed. And to the extent that defendant argues that complainant's statement was equivocal and could be construed to contradict defendant's statement that he entered through the window, such conflicting evidence is excluded from the § 7553 inquiry as modifying evidence. See State v. Blow, 2020 VT 106, ¶¶ 15-16, __ Vt. __, 251 A.3d 517 (mem.) (explaining that where evidence "raises a factual dispute more appropriate for the jury to determine," such evidence is excluded "to avoid judicial decisions on credibility at bail hearings" (quotations omitted)). Accordingly, we conclude that the State demonstrated that the evidence of guilt is great as to the unlawful-trespass charge.

¶ 14. We next consider defendant's argument that the court improperly relied on an uncertified criminal-history record from the VCIC. The court concluded that the record was admissible under 20 V.S.A. § 2056a(d). We review the trial court's interpretation of a statute without deference. State v. Richland, 2015 VT 126, ¶ 6, 200 Vt. 401, 132 A.3d 702. "Our goal in interpreting a statute is to carry out the intent of the Legislature." Id. "We start with the plain language of the statute, and if the meaning is clear, we will enforce it according to its terms." Id.

¶ 15. Vermont Rule of Evidence 802 establishes that hearsay is inadmissible "except as provided by these rules or by other rules prescribed by the Supreme Court or by statute." The State contends that § 2056a(d) exempts from the hearsay rule criminal-history records obtained from the VCIC. That statute provides: "A criminal history record obtained from the Center shall be admissible evidence in the courts of this state." 20 V.S.A. § 2056a(d). The plain language of the statute is clear and specifically permits a court to admit these criminal-history records regardless of certification.

¶ 16. Defendant maintains that § 2056a(d) does not constitute an exception to Rule 802. He points to statutes like 33 V.S.A. §§ 5255 and 5307, which state that "[h]earsay . . . shall be admissible," and argues that because § 2056a(d) lacks any specific mention of hearsay, it does not render the contents of the record admissible. We do not agree that the statute needs to explicitly indicate that hearsay within the record itself is admissible. In State v. Ferguson, 2020 VT 39, ¶ 21, 212 Vt. 276, 236 A.3d 207, we interpreted a statute regarding enforcement of animal-cruelty laws providing that affidavits of law-enforcement officers and other listed parties "shall be admissible evidence" in a forfeiture hearing, without specifically mentioning hearsay. See 13 V.S.A. § 354(f)(2). We explained that the statute "create[d] a limited exception to the hearsay rule" for sworn statements from law-enforcement officers but did not create "a blanket exception" for other hearsay statements contained within the affidavit, such as statements from a party not listed in the statute. Ferguson, 2020 VT 39, ¶ 21; see also V.R.E. 805 (explaining that hearsay within hearsay may be admitted if exception applies to each statement). That same reasoning applies here. Using similar language as in § 354(f)(2), the Legislature created a limited exception to the hearsay rule for VCIC criminal-history records by providing that such records "shall be admissible evidence." 20 V.S.A. § 2056a(d).[3]

---

[3] Defendant attempts to distinguish "admissible" evidence from "credible" evidence, relying upon 20 V.S.A. § 2056, which provides that "duly certified" criminal-history records from the VCIC "shall be competent evidence" in Vermont courts. Because we conclude that the plain language of § 2056a(d) is clear, we need not construe the statutory language in the context of

4

¶ 17.    Finally, we reject defendant's suggestion that the Legislature only intended for the VCIC criminal-history record to be used for identification purposes.  Section 2056a(b) allows a criminal-justice agency to request a person's VCIC record "for criminal justice purposes or other purposes authorized by State or Federal law."  20 V.S.A. § 2056a(b).  The statute defines "criminal justice purposes" as "the investigation, apprehension, detention, adjudication, or correction of persons, suspected, charged, or convicted of criminal offenses."  Id. § 2056a(a)(3).  As such, the statute plainly authorizes the use of criminal history records in the courts to adjudicate criminal charges.

¶ 18.    Thus, we conclude that under 20 V.S.A. § 2056a(d), the trial court properly admitted and relied upon defendant's criminal-history record from the VCIC in determining that the habitual-offender statute exposed defendant to potential life imprisonment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice

---

neighboring provisions.  See State v. Doe, 2020 VT 78, ¶ 10, 213 Vt. 205, 249 A.3d 658 (providing that only where statutory language is ambiguous will "we ascertain legislative intent through consideration of the entire statute" (quotation omitted)).  Even assuming for the sake of argument that the statutes conflict, under our principles of statutory construction, § 2056a would control as the more recent and specific provision.  See Athens Sch. Dist. v. Vt. State Bd. of Educ., 2020 VT 52, ¶ 30, 212 Vt. 455, 237 A.3d 671 (explaining that where statutes cannot be harmonized, "specific and more recent statutes regarding the same subject matter control over more general and older statutes").